## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **PRINCE GEORGE'S COUNTY,** | * | |
| **MARYLAND,** *et al.*, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil No. **18-3576 PJM** |
| | * | |
| **WELLS FARGO & CO.** *et al.*, | * | |
| | * | |
| Defendants. | * | |

## MEMORANDUM OPINION

Prince George's County and Montgomery County, Maryland ("the Counties"), filed this suit against Defendants Wells Fargo & Company and related entities[1] (collectively "Wells Fargo"), based on allegations of predatory and discriminatory residential mortgage lending, servicing, and foreclosure practices in violation of the Fair Housing Act (FHA), 42 U.S.C. §§ 3601 *et seq.* In its most recent opinion addressing Wells Fargo's motion to dismiss the Counties' amended complaint, the Court held that the Counties' allegations were sufficient to proceed as to their claims for economic injury to their tax bases and increased expenditures for municipal services.[2] Wells Fargo now seeks leave to file an interlocutory appeal of the Court's order denying the motion to dismiss the amended complaint. For the following reasons, the Court will **DENY** Wells Fargo's motion to alter or amend its judgment to certify an interlocutory appeal.

---

[1] Other Defendants include Wells Fargo Bank, N.A. (a subsidiary of Wells Fargo & Co.), Wells Fargo Financial, Inc. (previously a subsidiary of Wells Fargo & Co., until it transferred its lending operations to Wells Fargo Bank), and Wells Fargo "John Doe" Corps. 1–375 (affiliates or subsidiaries of Wells Fargo & Co. that may be responsible for the conduct alleged in the complaint).

[2] In its first opinion addressing Wells Fargo's motion to dismiss the Counties' original complaint, the Court had held that the Counties could proceed on their claim for increased foreclosure processing costs, as well as their noneconomic claims for injunctive or declaratory relief.

**I.**

The Counties allege that Wells Fargo engaged in predatory lending practices relative to racial minority communities in their respective jurisdictions, which they say contributed to the recent financial crisis, characterized by mortgage loan delinquencies, defaults, foreclosures, and home vacancies in the Counties, particularly in communities with high concentrations of FHA-protected minority residents. Am. Compl. ¶¶ 3–4, ECF No. 62. The Counties assert both disparate-impact and disparate-treatment theories, alleging both economic and noneconomic harms.

The suit proceeds in three counts: count I, disparate impact resulting from Wells Fargo's equity-stripping scheme, beginning with loan origination and continuing through servicing and mortgage foreclosure, *id.* ¶¶ 443–67; count II, disparate impact based solely on Wells Fargo's mortgage servicing and foreclosure practices, *id.* ¶¶ 468–82; and count III, intentional disparate treatment throughout the entire equity-stripping scheme, *id.* ¶¶ 483–93. The Counties allege five general categories of injuries: foreclosure processing costs, increased cost of municipal services (i.e., municipal expenditures), economic injuries to the Counties' tax base, lost municipal income, and various noneconomic injuries. *See* First Mem. Op. at 2–3, ECF No. 53.

In its August 9, 2019, opinion on the first motion to dismiss the original complaint, the Court held that the Counties had sufficiently pled their claims regarding foreclosure processing costs but found that the alleged noneconomic injuries for money damages were too removed from the alleged discriminatory conduct to have been plausibly proximately caused by Wells Fargo. *Id.* at 17. The Court therefore dismissed the noneconomic claims for money damages but held that the Counties could proceed on those claims insofar as they seek injunctive or declaratory relief. *See id.* The Court deferred decision on the Counties' other claims and granted them the opportunity to amend their complaint "setting forth in more detail how the losses caused by [Wells Fargo's]

purported violations may be ascertainable through a regression analysis or other specific method." Order at 1–2, ECF No. 54.

On November 15, 2019, the Counties filed an amended complaint, buttressed by a sworn declaration from data analytics expert Dr. Charles Cowan. Am. Compl., ECF No. 62; Cowan Decl., ECF No. 62-2. Wells Fargo again moved to dismiss, ECF No. 65, and, after that motion was fully briefed, the Court held a virtual hearing on October 22, 2020. On February 17, 2021, the Court issued a second opinion and order, granting the motion to dismiss as to the claim for lost municipal income but allowing the claims for economic injuries to the Counties' property tax bases and increased municipal expenditures to go forward. Second Mem. Op., ECF No. 91; Order, ECF No. 92. In relevant part, the Court held that the Counties had adequately alleged that their property tax–related and increased municipal-expenditure injuries were proximately caused by Wells Fargo's purported violation of the FHA because the Counties had shown "some direct relation" between those injuries and Wells Fargo's alleged conduct. *See* Second Mem. Op. at 7, 9–15 (quoting *Bank of Am. Corp. v. City of Miami* (*Miami I*), 137 S. Ct. 1296, 1305–06 (2017)). In particular, the Court determined that the Counties had sufficiently demonstrated how, engaging the professional expertise of Dr. Cowan, they proposed to use regression analysis techniques to isolate the damages to the Counties' property tax bases and the municipal expenditures that could be directly traced to Wells Fargo's alleged discriminatory lending. *See id.* at 11–15.

On March 15, 2021, Wells Fargo filed the present motion to amend the Court's judgment to include a certification for interlocutory appeal. ECF No. 98. The Counties responded in opposition, ECF No. 101, and Wells Fargo replied, ECF No. 103. The Court now considers Wells Fargo's motion.

## II.

Under 28 U.S.C. § 1292, federal courts of appeals have "jurisdiction to hear appeals only from 'final decisions' of district courts," so "interlocutory appeals—appeals before the end of district court proceedings—are the exception, not the rule." *Johnson v. Jones*, 515 U.S. 304, 309 (1995); *see* 2 Federal Procedure, Lawyers Edition § 3:212 (2021) ("Because certification is contrary to the federal policy against piecemeal appeals, it is not a routine procedure."). Section 1292(b) provides the exception: a district court may certify for immediate review any nonfinal order that involves "[1] a controlling question of law as to which [2] there is substantial ground for difference of opinion" and where "[3] an immediate appeal from the order may materially advance the ultimate termination of the litigation."

"The decision to certify an interlocutory appeal is firmly in the district court's discretion." *Butler v. DirectSAT USA, LLC*, 307 F.R.D. 445, 452 (D. Md. 2015). A district court's decision not to certify an interlocutory appeal is final and unreviewable, because lack of certification generally precludes appellate court jurisdiction. *See In re Pisgah Contractors, Inc.*, 117 F.3d 133, 137 (4th Cir. 1997).

Wells Fargo emphasizes that the Supreme Court has explained that "district courts should not hesitate to certify an interlocutory appeal" when a decision "involves a new legal question or is of special consequence." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111 (2009). At the same time, the Fourth Circuit has cautioned that section 1292(b) "should be used sparingly and thus that its requirements must be strictly construed." *Myles v. Laffitte*, 881 F.2d 125, 127 (4th Cir. 1989); *see also Fannin v. CSX Transp., Inc.*, 873 F.2d 1438, 1989 WL 42583, at *5 (4th Cir. 1989) (unpublished) ("[T]he kind of question best adapted to discretionary interlocutory review is a narrow question of pure law whose resolution will be completely dispositive of the litigation[.]").

"Unless *all* of the statutory criteria are satisfied, . . . 'the district court may not and should not certify its order . . . for an immediate appeal under section 1292(b).'" *Butler*, 307 F.R.D. at 452 (quoting *Ahrenholz v. Bd. of Trs. of the Univ. of Ill.*, 219 F.3d 674, 676 (7th Cir. 2000)).

## A.

Wells Fargo seeks certification to allow it to immediately appeal to the Fourth Circuit the proposed question of whether, as a matter of law, the Counties have adequately alleged the "direct relation between the injury asserted and the injurious conduct alleged" necessary to meet the proximate-cause requirement under the FHA.[3] *See* Motion to Amend at 2 (quoting *Miami I*, 137 S. Ct. at 1306). Wells Fargo argues that this question meets all three statutory requirements for interlocutory appeal; the Counties contend that it meets none of them.

### 1.

The first requirement for certification is that the proposed question for appellate review be a controlling question of law. To meet this requirement, the proposed question must present "an abstract legal issue that the court of appeals can decide quickly and cleanly" without "delv[ing] beyond the surface of the record in order to determine the facts." *Michaels v. Agape Senior Cmty., Inc.*, 848 F.3d 330, 340–41 (4th Cir. 2017) (quoting *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004)). "A controlling question of law [includes] every order [that], if erroneous, would be reversible error on final appeal." *Lynn v. Monarch Recovery Mgmt., Inc.*, 953 F. Supp. 2d 612, 623 (D. Md. 2013) (quoting *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir.), *cert. denied*, 419 U.S. 885 (1974)). This includes questions "of the meaning of a statutory or constitutional provision, regulation, or common law doctrine," *id.* (quoting *Clark Constr. Grp., Inc. v. Allglass Sys., Inc.*, No. DKC-02-1590, 2005 WL 736606, at *2 (D. Md. Mar. 30, 2005)),

---

[3] Again, the interlocutory appeal Wells Fargo seeks is with respect to the Court's second opinion and order, which substantively addressed only the tax-base and municipal-expenditure claims.

but excludes questions that do not determine whether litigation will continue and questions of "whether the district court properly applied settled law." *Michaels*, 848 F.3d at 341.

Wells Fargo argues that the question of whether the Counties' alleged injuries satisfy the proximate-cause requirement under the FHA is indisputably a question of law, as to which the court of appeals purportedly need not "delve beyond the surface of the record in order to determine the facts." *Id.* (quoting *McFarlin*, 381 F.3d at 1259). Wells Fargo contends further that this question is not only controlling but potentially dispositive, as it involves an essential element of the underlying cause of action. It argues that a Fourth Circuit decision on this question could even foreclose the Counties' theory of liability upon which their claim for foreclosure processing costs relies, thereby potentially resulting in dismissal of the entire complaint, even though that particular claim, having been ruled on in an earlier order of this Court, is outside the scope of the proposed appeal.

In response, the Counties submit that the proposed question is not controlling for the very reason that it does not encompass the Court's prior ruling that the claims for foreclosure processing costs have been adequately pled, which means the litigation will continue regardless of how the Fourth Circuit might answer the question as to the remaining claims. Moreover, the Counties submit that whether a plaintiff has adequately alleged proximate cause is not a "pure question of law" but a mixed question of law and fact. They explain that no matter the number of "steps" between the alleged injury and injurious conduct, courts are still obliged to "examine[] case-specific facts" to determine proximate cause. *See* Order at 9–10, *Cobb Cty. v. Bank of Am. Corp.*, No. 15-4081 (N.D. Ga. Feb. 4, 2021), ECF No. 112 (rejecting argument that the issue of proximate cause under the FHA is "purely legal").

The Court does not believe that the question proposed by Wells Fargo is either controlling or purely legal in nature. While the question is admittedly an *important* one, that does not make it controlling. The more immediate consideration is whether there is a pressing need that the proposed question be certified and answered at this point in the proceedings. The Court concludes that there is not. Once discovery is complete—which quite likely will require little more effort to pursue with respect to the tax-base and municipal-expenditures claims than with respect to the foreclosure processing costs claim—the results of the regression analyses either will tend to prove the Counties' allegations or they will not.

Even if it were controlling, "the question whether Plaintiffs' alleged injuries satisfy *Miami I*'s proximate cause requirement is [not] sufficiently removed from the 'facts of [this] particular case' to make interlocutory review appropriate." Order at 10, *Cobb Cty.*, No. 15-4081 (quoting *McFarlin*, 381 F.3d at 1259). In its decision on the second motion to dismiss, the Court discussed the kind of data upon which the Counties' allegations would depend—including, for example, the matter of how the state of Maryland determines residential property values—and how the Counties proposed to use and analyze that data. *Cf. id.* at 9 (explaining how the Eleventh Circuit in *Miami II* "articulated its conclusions not as a series of fact-neutral rules, but as an application of *Holmes*'s proximate cause principles to the facts in the complaint" (citing *City of Miami v. Wells Fargo & Co.*, 923 F.3d 1260, 1281–83 (11th Cir. 2019), *vacated as moot sub nom. Bank of Am. Corp. v. City of Miami*, 140 S. Ct. 1259 (2020) (mem.)). The Court thus viewed and continues to view the proximate-cause question not as a purely legal question subject to a categorical rule that may be applied without detailed consideration of the facts but instead one that is largely fact-specific.

*2.*

The second prerequisite for certification is that an interlocutory appeal must materially advance the ultimate termination of the litigation. Immediate appeal of an order may materially advance the litigation where appellate resolution of the proposed question "would serve to avoid a trial or otherwise substantially shorten the litigation." *Clark Const. Grp.*, 2005 WL 736606, at *4. In contrast, certification of an appeal is inappropriate "where the same parties and issues would remain in district court regardless of resolution of issues on appeal." *McFarlin*, 381 F.3d at 1259. Here, the same parties and at least some of the same issues would almost certainly remain in this Court even if the Fourth Circuit were to reach a different decision in applying the *Miami I* proximate-cause standard to one or more of the alleged claims. In fact, practically speaking, an interlocutory appeal would undoubtedly do more to delay resolution of the litigation than to advance it.

*3.*

Third, there must exist a substantial ground for difference of opinion as to resolution of the proposed question for which certification is sought. This occurs where "there is 'a dearth of precedent within the controlling jurisdiction and conflicting decisions in other circuits,' or 'where a court's challenged decision conflicts with decisions of several other courts.'" *Coal. for Equity and Excellence in Md. Higher Educ. v. Md. Higher Educ. Comm'n*, No. CCB-06-2773, 2015 WL 4040425, at *6 (D. Md. June 29, 2015) (quoting *APCC Servs., Inc. v. Sprint Commc'ns Co.*, 297 F. Supp. 2d 90, 97–98 (D.D.C. 2003)). The threshold for this requirement "is a high one," focusing on "whether courts themselves disagree as to what the law is." *Ekstrom v. Cong. Bank*, No. ELH-20-1501, 2021 WL 119000, at *3 (D. Md. Jan. 13, 2021). It is not enough to show a lack of unanimity among courts, a dearth of relevant authority, or even a dispute over a question of first

impression. *Id.* (collecting cases). Rather, courts tend to find a substantial ground for difference of opinion where "the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented." *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) (quoting 2 Federal Procedure, Lawyers Edition § 3:218 (2010) (footnotes omitted)).

The handful of district court decisions applying the proximate-cause standard articulated in *Miami I*, including the Court's second opinion in this case, have not reached uniform conclusions as to the viability of similar claims or alleged injuries—but neither have they been presented with identical allegations. Wells Fargo emphasizes a few decisions by other district courts that precluded claims similar to one or more of the four remaining claims here, but that is not, in the Court's judgment, enough to show a *substantial* ground for difference of opinion as to the claims in *this* case. For instance, with respect to the alleged increase in municipal expenditures caused by the alleged discriminatory lending (e.g., increased law enforcement services), which in similar cases has been found not to satisfy proximate cause under the FHA, the courts in opinions cited by Wells Fargo were confronted with skimpier allegations than those the Counties present here, and in some instances, with all respect, the decisions of these courts tend to lack detailed analysis.[4] *Compare* Second Mem. Op. at 9–15 & n.9 *with Cty. of Cook v. Bank of Am. Corp.*, No. 14-cv-2280, 2018 WL 1561725, at *4–7 (N.D. Ill. Mar. 30, 2018) (dismissing municipal services

---

[4] Take the claim for certain municipal expenditures occasioned by Wells Fargo's purported discriminatory policies. Setting aside consideration of regression analysis for a moment, in the Court's view, the Counties are positing a direct link between the foreclosed and vacated properties resulting from Wells Fargo's discriminatory lending practices, centered on FHA-protected minority borrowers and minority neighborhoods, and an extraordinary increase in police and fire services that had to be deployed to those properties, as compared to properties or neighborhoods not directly affected by Wells Fargo's purportedly discriminatory conduct. The challenge, of course, will be whether the Counties can prove that significant difference using data they obtain during discovery, which they may or may not be able to do.

expenditure claim together with other claims, with little direct analysis and no discussion of regression analysis techniques, as raised in the present case).

Moreover, the fact that some courts may have taken a different tack on claims similar to those found here does not necessarily mean those decisions conflict with this Court's decision—especially considering, as mentioned, that the question Wells Fargo proposes is one that requires close examination of particular factual allegations. Again, the Court in its second opinion specifically compared the municipal-expenditure allegations in the Counties' amended complaint to those in the *Miami* and *Oakland* complaints and determined that the former reasonably satisfy the proximate-cause standard that the latter were deemed not to have. *See* Second Mem. Op. at 15 n.9 (citing Am. Compl., *City of Oakland v. Wells Fargo & Co.*, No. 15-cv-4321 (N.D. Cal. Aug. 15, 2017); Am. Compl., *City of Miami v. Wells Fargo & Co.*, No. 13-cv-24508 (S.D. Fla. Nov. 15, 2015). In any event, generally speaking, as the Counties note, nearly every district court in the country to consider the question has agreed that municipalities adequately allege FHA proximate cause when, *at the pleading stage*, they allege that they can isolate and attribute the claimed injuries through expert testimony employing regression analysis. *See., e.g.*, *City of Sacramento v. Wells Fargo & Co.*, No. 18-cv-416, 2019 WL 3975590, at *8–9 (E.D. Cal. Aug. 22, 2019); *City of L.A. v. Citigroup Inc.*, 24 F. Supp. 3d 940, 949–50 (C.D. Cal. 2014); Order at 26–30, *Cobb Cty.*, No. 15-4081 (N.D. Ga. Sept. 18, 2020), ECF No. 100. This of course does not mean that the Counties will ultimately prove their case, only that at this juncture they should be allowed to proceed and try to establish a connection between what they have pled and what they suggest the evidence will ultimately show.

In sum, for interlocutory appeal purposes, the Court is not persuaded that there exists substantial ground for difference of opinion based on the mere fact that other courts presented with

similar but different allegations may have reached different conclusions. *Cf. Virginia ex rel. Integra Rec, LLC v. Countrywide Sec. Corp.*, No. 14-cv-706, 2015 WL 3540473, at \*5 (E.D. Va. June 3, 2015) ("A mere lack of unanimity, or opposing decisions outside of the governing circuit, need not persuade a court that a substantial ground for disagreement exists." (citation omitted)).

**B.**

A final perspective:

The Fourth Circuit does not take interlocutory appeals lightly; it has shown itself to be extremely reticent to grant this exception to the general limitation on its jurisdiction that it may only entertain *final* orders. *See, e.g.*, *Myles*, 881 F.2d at 127. Wells Fargo's arguments in favor of an interlocutory appeal, while perhaps not unreasonable, simply do not meet the high bar for certification. The Court believes it exceedingly unlikely that the Fourth Circuit would allow an appeal at this stage. Moreover, suspending the litigation at this juncture in an effort to get an answer to the proximate-cause question as it relates to the Court's most recent order would, without a doubt, cause significant delay and block the relevant discovery while the appeal pends. Considerations of delay and merits development would be less compelling if an appeal were likely to "be completely dispositive of the litigation." *Fannin*, 1989 WL 42583, at \*5. But that outcome is not likely—indeed, it is not even plausible.

As things stand, there is at least some indication that, following discovery, the results of the Counties' regression analyses, when applied to the Counties' tax-base and municipal-expenditure claims as to which appeal is being sought, will tend to establish what the Counties allege. But even if they do not, the other claimed injuries, which do not depend on regression analyses, will remain. From the standpoint of judicial economy, the Court, in its discretion, deems it more sensible to proceed with the case and see what evidence in fact does develop.

## III.

The Court **DENIES** Wells Fargo's motion to amend its judgment to certify the proposed question for appeal. A separate order will issue.

May _13_, 2021

PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE
